# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

MARILYN ECHEVARRIA DE PENA,

       Plaintiff,

vs.                              Case No.: 12-22248-CIV-HUK

UNITED STATES OF AMERICA;
BUREAU OF PRISONS;
WARDEN JORGE L. PASTRANA;
DOCTOR JUAN MONSERRATE; and
OFFICER CHARLES McCORMICK,

       Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
### TO DISMISS AMENDED COMPLAINT

    Marilyn Echevarria De Peña, (hereinafter "Plaintiff"), by and through undersigned counsel, files her response to the Defendants' Motion to Dismiss the Amended Complaint and in support respectfully provides as follows:

## I. SUMMARY OF THE ISSUES PRESENTED

    Plaintiff filed an action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, seeking damages against the United States for negligence resulting in the death of Plaintiff's husband, Samuel Pena-Ruiz.  She sued three Bureau of Prisons' (BOP) officials, Jorge L. Pastrana, Warden of Federal Correction Institution Miami (FCI Miami), Dr. Juan Monserrate, Medical Doctor for FCI Miami, and Officer Charles McCormick, under *Biddens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), seeking damages for violating Pena-Ruiz's constitutional rights. All Defendants were sued in their personal and official capacity.

The Government has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) which should be denied as premature at this juncture.

## II. IT IS INAPPROPRIATE TO DISMISS THE ACTION AGAINST WARDEN PASTRANA, DR. MONSERRATE AND OFFICER MCCORMICK

To the extent that the Government takes the position that Warden Pastrana, Dr. Monserrate, and Officer McCormick are not proper parties to the FTCA action, Plaintiff refers the Court to the first cause of action in the Amended Complaint where only the United States and the Federal Bureau of Prisons are listed as Defendants pursuant to the FTCA. The mentioning of Warden Pastrana, Dr. Monserrate, and Officer McCormick in the complaint at the initial juncture is to provide a summary of the parties to the court. Since the Warden Pastrana, Dr. Monserrate and Officer McCormick are not listed in the First Cause of Action under the FTCA, the Government's request to dismiss should be denied.

Furthermore, Fed. R. Civ. P. Rule 12(b)(6) motions test the _sufficiency of the pleading_, not the sufficiency of the parties involved. See _Smith v. Frye_, 488 F.3d 263, 274 (4th Cir. 2007); _Christensen v. County of Boone_, 483 F.3d 454, 458 (7th Cir. 2007); _Petruska v. Gannon Univ._, 462 F.3d 294, 302 (3rd Cir. 2006). As the Court in _Frye_ stated:

> "[T]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." _Edwards v. City of Goldsboro,_ 178 F.3d 231, 243 (4th Cir.1999). A 12(b)(6) motion "does not resolve contests surrounding the facts [or] the merits of a claim." _Id. (quoting Republican Party v. Martin,_ 980 F.2d 943, 952 (4th Cir.1992)). Accordingly, an appellate court "may only affirm the dismissal of the complaint if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" _H.J. Inc. v. Northwestern Bell Telephone Co.,_ 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)(_quoting Hishon v. King & Spalding,_ 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). _Moreover, when a complaint alleges a civil rights violation, "we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory" that could be proved consistent with the allegations. Edwards,_ 178 F.3d at 244 (overturning dismissal of suspended government employee's First Amendment claims).

*Id. Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007)

Rule 12(b)(6) compels the examination of whether the pleader did what she was obligated to do under the federal pleading, Rule 8 and 9.  See *Hefferman v. Bass*, 467 F.3d 596, 599-600 (7th Cir. 2006)(noting that Rule 12(b)(6) "does not stand alone" but implements Rules 8 and 9).

Under Rule 12(b)(6), a claim will be dismissed either because it asserts a legal theory that is not cognizable as a matter of law (inapplicable to the instant matter) or because it fails to allege sufficient facts to support an otherwise cognizable legal claim.  When the claim is challenged under this rule, the Court construes the pleading liberally in the pleader's favor.  See *Kaltenbac v. Richards*, 464 F.3d 524, 526-27 (5th Cir. 2006)(The Court presumes all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party); *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 127 S.Ct. 2499 (2007); *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007); *Jackson v. Billingham Bd. of Educ.*, 544 U.S. 167 (2005).

As such, this Court must agree that as per the first cause of action of the Amended Complaint, that the United States is a proper party under the FTCA, and that the only available solution would be to replace the BOP for the United States of America.[1]

### A. The Claims Against Warden Pastrana, Dr. Monserrate, and Officer Mccormick in their Official Capacity is Appropriate

As far as the Government's position that pursuant to the Amended Complaint paragraphs 7 thru 10, that Warden Pastrana, Dr. Monserrate, and Officer McCormick are being sued in their

---

[1] Although the United States of America is a listed Defendant pursuant to the Federal Tort Claims Act in the Complaint, counsel will agree that the BOP should be excluded from the Federal Tort Claims Act lawsuit.

official capacities therefore precluded from a *Biven*[2] actions is mistaken.  Paragraphs 7 thru 9 of the Amended Complaint merely list the parties involved in the action and only classifies the aforementioned Defendants as being sued by *Biven's* action.

The Complaint in the Second Cause of Action pursuant to paragraphs 39 through 44 lists that the Defendants Jorge Pastrana, Juan Monserrate, and Charles McCormick, acted with deliberate indifference towards Mr. Pena-Ruiz's medical emergency, referring to these defendant's in their *individual capacities* and not in their *"official"* capacities.  Therefore, since the Defendants are listed in their individual capacity and not with their Federal Bureau of Prisons classification employment titles, it is obvious that the Amended Complaint raises a claim against the  Defendants as being sued in their *individual capacity* and not in their official capacity on this claim.

Therefore, any reference to the Government's position in their motion to dismiss that Jorge Pastrana, Juan Monserrate, and Charles McCormick, are being sued in their official capacity under *Biven's* is mistaken.   These defendant's are being sued in their *personal* capacity as permitted by Title 42 U.S.C. § 1993.

## III.  THE  PLAINTIFF  HAS  STATED  A  CLAIM  OF  CONSTITUTIONAL DEPRIVATION  BY  WARDEN  PASTRANA,  DR.  MONSERRATE,  AND  OFFICER MCCORMICK

### A.  The minimum threshold of Fed. R. Civ. P. Rule 12(b)(6) has been met.

In this ground to dismiss the Complaint, the Government takes the position that the Plaintiff cannot state a claim against any of the three individual Defendants to support the position that Pena-Ruiz's constitutional rights were violated.  This position is flawed in several respects.

---

[2] *Bivens v. Six Unknow Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) clarified that all that is required from the Plaintiff is *"sufficient factual matter, that if accepted as true, would state a claim of relief that is plausible on its face*." *Id* at 570.   The Amended Complaint contains sufficient grounds for the Court to reach the conclusion that there is a *"plausible"* possibility that deliberate indifference towards Pena-Ruiz's serious medical needs were not attended.   For example, Pena-Ruiz passed away under the care of the Federal Bureau of Prisons.   He suffered from hypertension, obesity, diabetes, hyperlipidemia, GERD,[3] and anxiety disorder amongst other medical conditions.   On October 30, 2008, Mr. Pena-Ruiz was exercising on a step machine when he suddenly collapsed; various inmates immediately started providing CPR to Pena-Ruiz who was gasping for air.   Several minutes later, an FCI Correctional Officer Charles McCormick, arrived and ordered the inmates to stop CPR, and to withdraw away from Pena-Ruiz who was still gasping for air.    Officer McCormick and other FCI personnel failed to provide Pena-Ruiz with CPR and did not allow other inmates to provide CPR either.   Based on Mr. Pena's personal medical file there can be no dispute that Warden Pastrana, and Dr. Monserrate, each had subjective knowledge of the risk of serious harm to Pena-Ruiz and that each individual Defendant disregarded that risk.

Following the Eleventh Circuit's reasoning in the *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003) the Plaintiff must "show that a prison official was acting with deliberate indifference to serious medical needs which must satisfy both an objective and subjective inquiry."   First, the Plaintiff must set forth evidence of an objective serious medical need.   That standard has been established based on Pena-Ruiz' medical file.   Both the medical staff, Warden Pastrana and Dr.

---

[3] Gastroesophageal reflux disease (GERD) is a chronic digestive disease that occurs when stomach acid or, occasionally, bile flows back (refluxes) into your food pipe (esophagus

Monserrate, had access to Pena-Ruiz's medical file and knew or should have known his debilitating medical conditions. The Eleventh Circuit in *Hill v. Dekalb Reg'l Youth Det. Center*, 40 F.2d 1176 (11th Cir. 1994) determined that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would instantly recognize the necessity for the doctor's attention." *Id.* As previously stated herein, Dr. Monserrate, as the physician assigned to FCI Miami had access to Pena-Ruiz's medical file and was placed on notice as to Pena-Ruiz's medical condition. In fact, discovery in this matter will determine the extent of medical care that Dr. Monserrate was providing to Pena-Ruiz. Also, Warden Pastrana, as Dr. Monserrate's immediate supervisor, had access to Pena-Ruiz's medical file and would have been aware of Pena-Ruiz's imminent medical condition.

Also, in order to establish that prison officials acted with deliberate indifference to serious medical needs, the Plaintiff must show (1) subjective knowledge by the defendant of a risk of serious harm; (2) disregard for that risk; (3) by conduct that is more than negligence. See *Youmans v. Gagnon*, 626 F.3d 557 (11th Cir. 2010). In the instant matter, Warden Pastrana, Dr. Monserrate and Charles McCormick were all aware of Pena-Ruiz's medical condition and the risk of serious harm of permitting him to perform extraneous exercise on the step-master, an exercise machine that causes an elevated heart rate. All three Defendants disregarded that risk by permitting Pena-Ruiz to continue with the strenuous exercise, and by their conduct and negligence, by refusing to perform CPR while Pena-Ruiz gasped for air, disregarded his medical attention that was more than negligence. All these causes contributed to Pena-Ruiz's death.

The Government's position that the Plaintiff must establish that Warden Pastrana, Dr. Monserrate, and Officer McCormick each had subjective knowledge of the risk of serious harm to Pena-Ruiz and that each individual Defendant disregarded that risk by conduct that was more

than negligence is a burden that is not required at this stage. As per Federal Rules of Civil Procedure Rule 12(b)(6) all that the Plaintiff is required to produce is *"enough"* to give the Defendants a fair notice of both the complaint's claims and the grounds for those claims. See *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 127 S.Ct. 2499 (2007)(although the rule encourages brevity, the complaint must say enough to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests.")

Neither is the Government's request that the Plaintiff must provide sufficient proof of the "subjective knowledge of risk of serious harm to Pena-Ruiz, and which 'Defendant disregarded that risk by conduct that was more than negligence'" is not a requirement that must be presented in the initial Complaint. All that is required is that the facts pled must be sufficient, to give rise to a "reasonably founded hope that the discovery process will reveal relevant evidence" in support of his claims. See, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). The threshold requirement of placing the Defendants on "fair notice of what the Plaintiff's claims are and the grounds upon which it rests" has been met by the Amended Complaint. This Court must agree that pursuant to Rule 12(b)(6) the motion to dismiss on these grounds should not be granted. The Plaintiff has alleged enough facts to raise his claims beyond the level of mere speculation. *Twombly* at 1965. As the Court in *Twombly* so aptly presented, the Plaintiff must "nudge their claims across the line from conceivable to *plausible.*" *Id. Twombly* at 1974 (to cross into the plausible liability, the allegations must be factual, not conclusory, and suggestive, not neutral).

Based on the facts of this case a "plausible" claim has been established. The allegations that Warden Pastrana, Dr. Monserrate, and Officer McCormick, provided deliberate indifference to Pena-Ruiz's medical care while he laid gasping for air and refused to perform CPR to save Pena-

Ruiz's life, reaches the minimum requirement of placing the Defendants on notice of "plausible claims."

### 1.   Warden Pastrana was Aware of the Serious Risk of Harm to Pena-Ruiz.

The Government takes the position that the Amended Complaint does not imply that Warden Pastrana knew that Pena-Ruiz had collapsed on October 30, 2008 or that he was aware of the serious risk to Pena-Ruiz on October 30, 2008 and disregarded that risk by conduct that was more than negligent.  That position is misplaced.

Warden Pastrana, by having access to Pena-Ruiz's medical file, had the authority and the obligation to designate Pena-Ruiz to proper medical supervision within FCI Miami.  By failing to adequately delegate to Dr. Monserrate that proper medical attention be provided to Pena-Ruiz, Warden Pastrana provides deliberate indifference to Pena-Ruiz's medical care.  The Plaintiff by alleging that Warden Pastrana acted with deliberate indifference for not training and instructing medical officers to provide proper protocols to Correction Officers when handling life threatening, medical emergencies, such as the one suffered by Pena-Ruiz, caused Pena-Ruiz's death to occur which would have been avoidable had CPR been properly performed by Officer McCormick and Dr. Monserrate.  Relying on the *Twombly* reasoning, a "realm of plausible liability" has been presented based on the death of Pena-Ruiz.  It could be "suggested" that based on Warden Pastrana's failure to adequately instruct Medical Staff and Correction Officers on protocols for CPR in heart attack situations, that the Plaintiff has alleged enough facts to "raise the claims beyond a level of speculation."  *Id. Twombly* at 1974.

The theory that *Biven's* liability cannot be established solely on *respondeat superior* is inapplicable to the instant matter.  That rule usually applies only when the employee's conduct *was within the scope of employment*.  Failing to perform CPR by either Dr. Monserrate or Officer

McCormick to a dying Pena-Ruiz on the floor, cannot be measured "within the scope of employment" performance.  Furthermore, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Warden Pastrana can be held liable "when there is a *casual connection* between the action of the supervising official and the alleged constitutional deprivation."  *Id.* The "casual connection" between Warden Pastrana and his training to Correctional Offier McCormick and Doctor Monserrate has been established to allow the Amended Complaint to proceed.  It is not until discovery in the instant matter is concluded, that the next level of *casual connection* could be recognized to determine the extent of training, knowledge, review, and/or supervision that Warden Pastrana conducted over Officer McCormick and Dr. Monserrate.

Although the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) clarified that a "government official, title notwithstanding, is only liable for his or her own misconduct," this still does  not warrant dismissal of the complaint against Warden Pastrana.  It is the allegations raised in the initial Complaint, that are sufficient to move the claims "beyond the level of speculation," not the level of **success.**

Warden Pastrana, by his deliberate indifference in not implementing a program to instruct medical staff and correctional officers on the protocols to follow when handling life threatening medical emergencies, causes the complaint to reach the required level of the "conceivable and plausible claim" standard.

### 2.   The Minimum Treshold to Establish a Claim Against Officer McCormick has Been Met

Officer McCormick was a Corrections Officer at FCI Miami on the date that Pena-Ruiz collapsed while exercising.  Minutes after Pena-Ruiz collapsed, Officer McCormick arrived and *ordered* other inmates who were providing CPR to Pena-Ruiz, and quite possibly saving his life,

to stop providing CPR and to "withdraw away" from Pena-Ruiz, who was "still gasping for air." Several minutes later, other FCI personnel arrived at the scene, however Officer McCormick did not provide CPR to Pena-Ruiz.  Neither did the other officer's that arrived at the scene.

The Government's position that Officer McCormick's actions do not state a plausible claim for relief as alleged in violation of Pena-Ruiz' Eighth Amendment clearly fails.  Under the Supreme Court's theory in *Twombly*, the allegation as raised clearly passes the "realm of plausible liability, to the allegations of suggestive liability." *Id.*  The allegation as presented in the Amended Complaint, clearly establishes that Officer McCormick "was aware of risk of serious harm to Pena-Ruiz as he gasped for air, disregarded that risk, and refused to provide CPR while Pena-Ruiz was on the floor dying."  Although, the Government attempts to justify Officer McCormick's actions by claiming that there was "no allegation that Officer McCormick knew what was occuring," it is evident that Pena Ruiz needed emergency care as was evident by the inmates around [Pena-Ruiz] that were providing CPR.

The fact that other inmates were providing CPR, should have placed Officer McCormick under the "subjective standard" that he knew the risk of serious harm to Pena-Ruiz at the time if he did not act.  He disregarded that risk, not only directing other inmates to step away and stop CPR, but failed to act and provide CPR to Pena-Ruiz thus possibly saving his life.  Officer McCormick by not acting to save Pena Ruiz' life, crosses the line into an obvious "deliberate indifference" of Pena Ruiz' Eight Amendment constitutional right.

The Government's position that it was possible that Pena-Ruiz had been assaulted by other inmates or whether there was a medical event has no bearing on whether the requirements of Fed. R. Civ. P. Rule 12(b)(6) has been met or not.  The fact that Pena-Ruiz required medical attention, either via an assault of another inmate, a medical condition, or otherwise, does not diminish

Officer McCormick's responsibility to provide immediate life saving CPR to Pena-Ruiz and does not allow Officer McCormick to disregard that right.   Under the same theory that there was no way of knowing by Officer McCormick if the "inmates providing CPR were qualified to do so or not" does not suffice to justify Officer McCormick's actions in not performing CPR.  In fact, whatever justification the Government relies upon to validate Officer McCormick's actions, there are all irrelevant to Fed. R. Civ. P. Rule 12(b)(6).

Furthermore, the Government's position that Officer McCormick did not "know what had caused Pena-Ruiz to collapse, knew that CPR was necessary, and disregarded the need for CPR by conduct that was more than negligent" is also irrelevant.  For example, it is obvious and they do not contest that Pena-Ruiz had collapsed.  They readily admit that CPR was being performed on Pena-Ruiz at the time of his collapse.  Whether Officer McCormick disregarded the need to perform CPR for whatever reason, has yet to be determined at this stage.  All the facts pled in the Amended Complaint establish a sufficiency to give the rise to a "reasonable founded hope" that discovery process will reveal relevant evidence in support of the claim that Officer McCormick acted with deliberate indifference to Pena Ruiz medical claim.  See *Twombly* at 1967.  Whether Officer McCormick was trained in CPR by part of his Federal Bureau of Prisons training procedure, whether he followed proper protocol in notifying the medical staff, and/or whether Officer McCormick deliberately refused to provide CPR to Pena-Ruiz as he laid on the floor gasping for air, is an issue that will be resolved during discovery.

The threshold requirements under Federal Rules of Civil Procedure Rule 12(b)(6) has been met. The Plaintiff has alleged enough facts to raise the claims beyond the level of mere speculation.

### 3. The Minimum Treshold to Establish a Claim Against Dr. Juan Monserrate has been met.

In the Amended Complaint, the Plaintiff states a claim that Dr. Monserrate disregarded the risk of serious harm to Pena-Ruiz by his gross negligence.  First, Dr. Monserrate did not have his first aid medical bag when he arrived at the scene where Pena-Ruiz was gasping for air, although, he was advised by Officer McCormick of some other FCI Officer that Pena Ruiz had suffered a heart attack.  As the government presents "either McCormick or some other FCI staff member had summoned medical assistance to attend to Pena-Ruiz."[4] *Id.*

Dr. Monserrate by arriving to render medical care for Pena-Ruiz after being instructed by "either McCormick or some other FCI staff member" that medical assistance was required for without his medical bag is a total disregard to Pena Ruiz medical emergency and is considered gross negligence.  Furthermore, Dr. Monserrate did not perform CPR.   The Government's position that the Amended Complaint does not "allege that no CPR was performed on Pena-Ruiz by some other FCI personnel" is not only incorrect, but is also a premature statement at best. Once discovery is conducted and additional facts are developed as to whom, if anyone, performed CPR on Pena-Ruiz prior to his passing,  will be clarified.

Since this Court must construe the pleadings liberally in the pleader's favor, *Kaltenbac v. Richards*, 464 F.3d 524, 526-27 (5th Cir. 2006), this Court must agree that at a minimum the allegations against Dr. Monserrate must be permitted to move further.  The facts as presented are sufficient to give rise to a "reasonably founded hope" that through the use of discovery, further support of the claim that Dr. Monserrate did not have his medical bag, that he failed to perform CPR, and that Officer McCormick did not provide CPR can be supported.  Further, allowing the

---

[4] *Id* D.E. at 12

Complaint to move further, through the use of discovery, the Plaintiff will be able to establish if _any other_ FCI personnel provided CPR to Pena-Ruiz.  It is too early at this stage to take the defensive position that someone else at the FCI _might have_ provided CPR.

The allegations on the complaint is that it was rather obvious to Dr. Monserrate and Officer McCormick that Pena Ruiz required CPR and was dying.  The obvious cannot be overlooked by the defendants.   See _Stele v. Choi_, 82 F.3d 175 (Seventh Cir. 1996)("if the symptoms plainly called for particular medical treatment – the leg is broken, it must be set; **_the person is not breathing, so CPR must be administered – a doctor's deliberate decision not to furnish the treatment might be actionable. . . ._**").  All the facts of this case are sufficient evidence, and important evidence, as to whether the very obviousness of Pena-Ruiz's medical problem might be enough to show knowledge on Dr. Monserrate's part that medical treatment was immediately required.

As far as the position that Dr. Monserrate "purposely ignored" Pena-Ruiz's medical conditions, and failed to provide him with a proper supervised, exercise program, cannot be developed until discovery is completed.  Whether Dr. Monserrate "purposely ignored" Pena Ruiz's medical conditions will be established once discovery is conducted.   In fact, the Complaint need not identify a particular legal theory at all as to Dr. Monserrate's actions.  See _Williams v. Seniff_, 342 F.3d 774, 792 (7th Cir. 2003)(A claim generally will not be dismissed, even though the asserted legal theories were not cognizable or relief sought were unavailable, so long as other tenable legal claims are evident from the facts averred on the face of the Complaint.) See _Glover v. Liggett Group, Inc._, 459 F.3d 1304 (11th Cir. 2006)("dismissal is proper when due to a dispositive issue of law, no construction of the plaintiff's facts will support a cause of action").  In fact, Courts are especially hesitant to dismiss pleading at this stage if the claims

could be better examined following development of the facts through discovery.  See *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004); *Baker v. Cuomo*, 58 F.3d 814, 818-19 (2nd Cir. 1995).

Neither can the Government's defense that a "simple difference of medical opinion between the prison medical staff and the inmate" regarding the course of treatment does not state an Eighth Amendment claim to support the position that the claim should be dismissed.  Under the liberal standard presented under Federal Rules of Civil Procedure Rule 12(b)(6) this Court must agree that there is a *plausible cause of action* and *plausible liability* for Dr. Monserrate in his failure to address the immediate medical attention required of Pena-Ruiz.

## I**V.  QUALIFIED IMMUNITY IS NOT A DEFENSE**

In order to receive qualified immunity, the conduct must not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.  See *Pearson v. Callahan*, 555 U.S. 223 (2009).  Qualified immunity balances two important interests – the need to hold public officials accountable during the exercise power responsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.  Pearson v. Callahan,* 555 U.S. 223 (2009). The keyword this Court must rely on is "reasonably."   Government officials have immunity from suit rather than mere defense from liability.  The Court "must undertake a two step inquiry to determine the applicability of qualified immunity:

> First, a Court may decide whether the facts that plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the Court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  Qualified immunity is applicable unless the official's conduct violated clearly established constitutional rights.

*Id. Callahan*.

Qualified immunity has been clarified by the Supreme Court as extending to "officials performing discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Therefore, in order to show qualified immunity is inapplicable to the Defendant's actions, the Plaintiff must show that a sufficiently serious medical need existed, and that delayed medical care constituted an Eighth Amendment violation since the delay resulted in a substantial harm. For example, the harm caused in delaying the treatment must be substantial to present an Eighth Amendment violation. See *Beers v. Ballard*, 248 Fed. App. 988 (Tenth Cir. 2007)(a substantial harm requirement may be satisfied by lifelong handicap, *permanent loss*, or considerable pain).

The Government has not established that Warden Pastrana provided any instruction including "basic First Aid or CPR medical procedures," instructions how to submit "sick call requests, blood borne pathogens, infectious diseases, or supervised prevention." See *Ducharme v. Bd. of Counties Commissioner*, 2011 U.S. Dist. Lexis 58999 (D. Kan. 2011). Neither does the Government's Motion to Dismiss establish that Dr. Monserrate or Officer McCormick were acting within their "discretionary authority" when they failed to perform CPR on Pena-Ruiz. It has already been established that an Eighth Amendment constitutional violation occurs when Government officers exhibit "deliberate indifference to serious medical needs" on an inmate, such as intentionally or *delaying access to medical care* or intentionally interfering with prescribed treatments. See *Rodriguez v. Plymouth Ambulance Services*, 577 F.3d 816 (7th Cir. 2009). In fact, in order to overcome the qualified immunity this Court must reach one conclusion. That the "injury was *sufficiently serious* or painful to make the refusal of assistance uncivilized." See *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7thCir. 1997)(quoting *Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996). Officer McCormick's and Dr. Monserrate's failure to

perform CPR while Pena-Ruiz lied gasping for air on the floor and slowly dying not only violates Pena-Ruiz's Eighth Amendment constitutional rights, but meets the requirement that the "injury for which assistance is sought ... ***makes the refusal of assistance uncivilized.***"  *Id.*

### A. WARDEN PASTRANA, DR. MONSERRATE, AND OFFICER McCORMICK ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

As a threshold matter, it is undetermined whether Warden Pastrana was exercising his discretionary authority as a Warden of FCI Maimi when he made any decisions regarding establishing protocols for BOP Staff on responding to medical emergencies.  Without the use of discovery, this Court cannot reach a conclusion as to Warden Pastrana's actions and/or inactions relating to the training of BOP staff.

The Government's Motion to Dismiss on this ground should be denied, since there are "other tenable legal claims that are evidenced from the facts averred in the face of the complaint."  *Id. Glover v. Liggett Group, Inc.,* 459 F.3d 1304 (11th Cir. 2006)("dismissal proper when, due to a dispositive issue of law, no construction of plaintiff's facts would support a cause of action"). The motion to dismiss on qualified immunity grounds against Warden Pastrana based on his training and/or lack of training to BOP FCI Miami staff, is premature at best.

Neither can the Government's theory that Dr. Monserrate was exercising his discretion authority when he determined the appropriate treatment or medical responses when he arrived at the location where Pena-Ruiz had collapsed on October 30, 2008.  Absent further discovery as to Dr. Monserrate's protocol and required actions when arriving at an emergency where CPR is required, it is premature to determine that Dr. Monserrate is entitled to qualified immunity for his failure to provide adequate medical attention to Pena-Ruiz in violation of his Eighth Amendment constitutional rights.

A Court analyzes a defendant's claim of qualified immunity by determining (1) whether the facts alleged, "_taken in the light most favorable to the party asserting the injury_, .. shows the officer's conduct violated a constitutional right"; and (2) where the right was clearly established at the time of its alleged violation.  See _Saucier v. Katz_, 533 U.S. 194 (2001).  The Eighth Amendment, a prior established right, protects an inmate from governmental actor's "deliberate indifference of his basic needs."  Lack of medical care in an emergency, goes beyond the "basic need" requirement.  See _Cavalieri v. Shepard_, 321 F.3d 616, 620 (7th Cir. 2003).  Under this standard, conduct is "deliberately indifferent" when the official has acted in an intentional manner, _i.e.,_ "the defendant must have known that the plaintiff was in serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so."  _Id. Sheppard. See_ W_est v. Waymire,_ 114 F.3d 646, 651 (7th Cir.1997)("plaintiff must prove that the defendant, knowing that the plaintiff (or someone) was at serious risk of being harmed, _decided not to do anything_ to prevent that harm from occurring even though he could easily have done so") (emphasis added)

With this standard, this Court must agree that Dr. Monserrate was not exercising his discretion by not providing CPR and quite possibly saving Pena-Ruiz's life.  Neither was Officer McCormick exercising his discretion when he directed inmates that were attempting to save Pena-Ruiz's life to step back, and by not immediately beginning CPR as was he was properly trained to do.  Finally, Warden Pastrana is not subject to qualified immunity at this stage until it could be determined what training, if any, or what directions, if any, Warden Pastrana provided to Dr. Monserrate and to Officer McCormick regarding medical emergencies within FCI Miami.

## 1.   Warden Pastrana, Dr. Monserrate, and Officer McCormick violated Pena-Ruiz's Eighth Amendment Constitutional rights.

It is clear that at this stage pursuant to Fed. R. Civ. P. Rule 12(b)(6), that dismissal of the Complaint is premature.   The facts of the complaint support a plausible claim against the defendants.

The Amended Complaint alleges that Pena-Ruiz suffered from hypertension, obesity, diabetes, hyperlipidemia, GERD and an anxiety disorder, amongst multiple other medical conditions.   In the minimal threshold requirements for the filing of the Complaint, it is rather obvious that Dr. Monserrate provided deliberate indifference when he purposely ignored Pena-Ruiz's medical conditions by failing to provide him a proper supervised exercise program. Although the Government takes the position that Dr. Monserrate could not have violated Pena-Ruiz's Eighth Amendment constitutional rights, a request for dismissal can be overcome based on the facts presented.

All the Plaintiff must establish at this stage, is that there is, (1) an objective serious medical need that if left unattended, poses a substantial risk of serious harm; and (2) that the prison officials response to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and that merely accidental inadequacy, negligence and diagnoses or treatment, or even a medical malpractice actionable under State law.  See, *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000)

First Pena-Ruiz had objectively serious medical conditions that, if left unattended, would pose a substantial risk of serious harm.  The hypertension, obesity, diabetes, hyperlipidemia, GERD, and the anxiety disorder along with other medical conditions that Pena-Ruiz suffered, were left unattended to the stage that they caused his death.  Second, it has been established in the Complaint that prison officials' responses to his medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and subsequent death.  Prison officials,

by not properly attending to Pena-Ruiz's medical conditions, by "not providing a proper exercise program or proper supervision, and most importantly, by not rendering immediate medical attention to Pena-Ruiz," negligently, permitted his condition to deter to the point where he died. By not providing immediate medical attention to Pena-Ruiz, the Defendants provided a "unnecessary and wanton infliction and pain" upon Pena-Ruiz which led to his subsequent death.

### 2.   The October 30, 2008 Incident

The Complaint has clearly established a deliberate indifference by failing to address Pena-Ruiz's immediate medical requirements on October 30, 2008.  Some Courts have held that officials who exceed thee discretion that they have are not entitled to qualified immunity.  See *Harbort Intern, Inc. v. James*, 157 F.3d 1271 (11th Cir. 1998); *Boretti v. Wiscomb*, 930 F.2d 30 1150 (6th Cir. 1991) (prison pharmacist who refused to fill prescription was not immune because he lacked discretion to refuse doctor's orders); *Howard v. Atkinson*, 87 F.2d 134, 140 (8th Cir. 1999)(defendant who acted in violation of prison policies were not immune); *In re Allen*, 106 F.3d 582 (4th Cir. 1997) (official who acts completely outside of the scope of her authority as clearly limited by statutes and regulations is not entitled to immunity).   As here, Officer McCormik and Dr. Monserrate, had no "discretion" to refuse to administer CPR to Pena Ruiz. Moreover, it will be clarified during or discovery, that Officer McCormick and Dr. Monserrate, also violated Federal Bureau of Prisons policy by not following protocol established by Warden Pastrana, if any, on the emergency medical procedures to follow at FCI Miami.

In fact, officials *are expected* to use common sense in assessing their legal obligations.  See *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001)(holding that "even if there is no closely analogous case law, a right can be clearly established on the basis of "common sense");

*Sepulveda v. Ramirez*, 967 F.2d 1413 (9th Cir. 1992)(officer was not immune for conduct that "runs contrary to common sense, decency" and state regulations).

Although the Eighth Amendment clearly forbids prison officials from "unnecessary wanton inflicting of pain" on an inmate by acting with "deliberate indifference" towards the inmate's serious medical needs, *Estelle v. Gamble*, 429 U.S. 97 (1976), any lack of prior "case on point" will not make a defendant immune for clear constitutional violations.  See *Griffin v. Lombardi*, 946 F.2d 604, 607-08 (8th Cir. 1991)(officials who presented rational justification for rule were not entitled to immunity when there was evidence that they did not follow their own rule in dealing with other inmates).   In this case, precedent does exists on this matter. See, *Stele v. Choi*, 82 F.3d 175 (7th Cir. 1996)("if the symptoms plainly called for particular medical treatment – the leg is broken, it must be set; ***the person is not breathing, so CPR must be administered – a doctor's deliberate decision not to furnish the treatment might be actionable. . . .***").

Finally, in *Anderson v. Creighton*, 430 U.S. 635 (1987) the Supreme Court set the following standard for the purposes of qualified immunity:

> The "contour of right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  That is to say, that an official action is protected by qualified immunity unless the ***very action in question has previously been held unlawful***, that is to say that in light of preexisting law the unlawfulness must be apparent."

*Id. Creighton* at 640.

Indeed, qualified immunity from liability is available to Government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Officer McCormick and Dr. Monserrate, who are probably trained in CPR, and who failed to perform it on a prisoner manifestly in need of such assistance, are liable under 42 U.S.C. § 1983 for

20

deliberate indifference.  See *McRaven v. Sanders*, 577 F.3d 974 (8th Cir. 2009); *Tiamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In the *Tiamka* case, three CPR trained officers declined to resuscitate an incapacitated prisoner, despite knowing the prisoner had responded favorably to CPR performed by fellow inmate.  *Id.*  "The record contains no explanation for the point in delaying CPR and thus, under the facts as presented in summary judgment, we cannot say that as a matter of law the officers were not deliberate and indifferent in responding to Tiamka's heart attack."  *Id* at 633, 34.

Therefore, the Defendants' position that the Plaintiff cannot demonstrate that it was not sufficiently clear that on October 30, 2008 to Office McCormick and Dr. Monserrate that the Eighth Amendment required them to perform CPR on another inmate, is mistaken.  It is not the position of the Plaintiff that Officer McCormick *must have permitted another inmate* to perform CPR, it is the position that he "directed" another inmates not to perform CPR that would have saved Pena-Ruiz's life.[5]  Also, Dr. Monserrate, knowing that the inmate was suffering a heart attack, violated Pena-Ruiz' Eighth Amendment rights, as to "unusual punishment" by failing to possess a proper first aid medical bag which quite possibly included a CPR mask in order to save Pena-Ruiz's life.   Dr. Monserrate was advised by Officer McCormick or other BOP Staff that Pena Ruiz had suffered a heart attack.  It has been clearly established that, a purported delay in CPR, establishes deliberate indifference in failing to respond to Pena-Ruiz's medical emergency claim.

## V.  THE NEGLIGENT DESIGNATION OF PENA-RUIZ TO FCI MIAMI BASED ON NEGLIGENT TRAINING OF BOP EMPLOYEES IS NOT BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION.

---

[5] With each minute that passes after the onset of a heart attack, the likelihood of survival decreases 7-10%.  See, http://www.chainofsurvival.com/cos/Timing_detail.asp

As previously mentioned, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) all that the Plaintiff must show in his allegations is that he must allege "enough facts to raise the claims beyond the level of speculation" in order to avoid dismissal for failure to state a claim.  It is rather evident, that until discovery is completed, it cannot be conclusively determined that the Defendants were not negligent in designating Pena-Ruiz to FCI Miami based on the number of medical conditions that he suffered at the time.

Although Title 28 U.S.C. § 2680(a) excepts from coverage of the FTCA discretionary functions, the crucial wording of the statute is "exercising due care."[6]  The violation of  not "exercising due care" was crucial in the instant matter.  The Defendants cannot shield themselves of the protections of Title 28 U.S.C. § 2680(a) when they designated Pena-Ruiz to FCI Miami which is not considered a "medical facility" according to BOP policy.

In fact, since the Plaintiff has alleged sufficient facts to support a cognizable legal claim, and since discovery will permit the further development of the designation of Pena-Ruiz as to which party knew the extent of Pena-Ruiz's medical conditions prior to designating him to FCI Miami which is a non-medical facility, this Court must agree that sufficient facts have been presented to merit further proceedings to allow the discovery process to reveal relevant evidence.  See *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).

---

[6] Title 28 U.S.C. § 2680(a) states in relevant part:

> Any claim based upon an act or omission of an ***employee of the Government, exercising due care,*** in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not discretion is involved be abused.

Although the Supreme Court in *United States v. Gaubert*, 499 U.S. 350 (1988) clarified that the Court must examine the "nature of the challenge[d] conduct to determine if it involved an element of judgment or choice.," whether the "challenge[d] conduct involves the element of judgment or choice," and whether the judgment or choice was being granted on considerations of public policy.   This is because the "purpose of exception is to prevent judicial second guessing of legislative and administrative decisions granted in social, economic, and political policy through the medium of an action in tort." *Id* 499 U.S. at 323.   Therefore although the Court under the second prong must look as to whether the questioned act is "susceptible to policy analysis" this review is premature at this stage.   It will not be until discovery is completed that the Court will be able to reach a conclusion as to whether "second guessing" of BOP actions is appropriate.   Once that stage is reached, the Defendant's can file for summary judgment under Fed. R. Civ. Pro. Rule 56 of follow other avenues they deem appropriate.

However, not until discovery is completed can it be determined that an improper designation or a violation of the "exercise of due care" as permitted under Title 28 U.S.C. § 2680(a) was not violated.   The Court cannot reach a conclusion as to the "second guessing" of the BOP's actions until all explanations have been discovered.   As per Fed. R. Civ. P. Rule 12(b)(6) dismissal requirements, the complaint states a "plausible valid claim."   This Court presumes that the well pleaded allegations are true, and must resolve all doubts and inferences in the pleader's favor viewing the pleading in light most favorable to the non-moving party. See *Tellabs Inc. v. Makor Issues and Rights, Ltd.*, 127 S.Ct. 2499 (2007).   The Court cannot dismiss this claim merely because it disbelieves the allegations or feels that the recovery may be remote or unlikely.   See *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Schewer v. Rhodes*, 416 U.S. 232 (1974).

Until discovery is completed, relating to the placement of Pena-Ruiz in FCI Miami, any position that the Defendants may raise relating to the discretionary function exception of Title 28 U.S.C. § 2680(a) is premature at best.

### A. Negligent Selection of the Institutution of Confinement

The Defendant raises the position that decisions for placement of BOP inmates is an exercise of the BOP employee's judgment in making choices as to the appropriate BOP facility where Pena-Ruiz should be detained, and therefore the claim should be dismissed.  However, the premature defense as to this claim cannot be addressed absent a completion of discovery.  Fed. R. Civ. P. Rule 12(b)(6) only tests the *sufficiency of the pleadings*.  See *Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007); *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).  The pleading as filed is sufficient to state a claim.

The Court is required to perform an examination of whether the pleader did what he was obligated to do under the Federal Pleadings Rule 8 and Rule 9.  Since the minimum requirements of Federal Pleadings Rule 8 and Rule 9 were met, by raising sufficiency of an allegation of wrongdoing, this Court must agree that under Fed. R. Civ. P. Rule 12(b)(6) dismissing the Complaint at this stage, pre-discovery, will be premature.

Title 18 U.S.C. § 4081 provides that a prisoner shall be classified according to the nature of the offense committed, the character of a prisoner, and such other factors as should be considered in proving an individualized system of discipline, *care, and treatment* of the persons committed to federal penal and correctional institutions.  Absent a complete discovery relating to Pena Ruiz designation, this Court cannot reach a conclusion that the claim should be dismissed.  The Plaintiff has done all that "she was obligated to do under the Federal Pleading Rules, Rule 8 and 9."  *Id Bass* 467 F.3d at 596.  As such, since it is unknown whether the BOP reviewed the

24

medical conditions to determine the particular correctional facility which necessitated medical care and expertise to manage the healthcare conditions of Pena-Ruiz, and since discovery has not been completed to determine what judgment of choice, if any, the Federal Bureau of Prisons applied in the instant matter, the Complaint should be allowed to proceed further and the request for dismissal of this claim should be dismissed.

### B. The Challenge Conduct is not Susceptible to Policy Analysis.

Although the Defendants take the position that the challenge conduct is susceptible to policy analysis in light of the Government exercising its discretion, their defense on this issue must fail at this stage.

For instance, it has not been determined whether the BOP officials followed policy choices in determining which facility could attend to Pena-Ruiz's medical needs.  It has neither been clarified whether the Federal Bureau of Prisons followed any policy choices to determine Pena-Ruiz's security level.  Neither has it been established what policy choices and decisions were followed as to the training on providing medical care in CPR emergencies, the topics covered, or the considerations applied to such public policy.  Until discovery is completed, dismissing the claim, although it clearly meets the sufficiency of the pleading requirements is premature.

### VI. EMOTIONAL DISTRESS SHOULD NOT BE DISMISSED AS A CLAIM WAS STATED.

The Defendants take the position that in the third cause of action, the Plaintiff fails to establish any Florida law that supports the allegations of either intentional infliction or emotional distress or negligent infliction of emotional distress.  What the Defendants fail to provide to this Honorable Court is that this proceeding originated in Puerto Rico.  Therefore, counsel relied on the law of Puerto Rico as it applies under the emotional distress allegation.  When the case is

transferred to the State of Florida, no amendment to the Complaint relating to Florida law in support of the third cause of action has been presented. Leave of court to amend the complaint as to this cause of action may be allowed by the Court.

### A. Plaintiff has Stated a Claim of Outrageous Conduct by the Defendant in the State of Florida.

The Defendants take the position that under Florida law, the Plaintiff must prove (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) which conduct must have been caused by the suffering; and (4) the suffering must have been severe in order to establish an intentional infliction of emotional distress claim. See *Hart v. United States*, 894 F.2d 1539 (11th Cir. 1990). In case such as this, the Supreme Court has established a remedy.

The Supreme Court has held that "presumed damages" "may possibly" be appropriate as a substitute for compensatory damages in cases where the plaintiff's injury is impossible to measure. *Memphis Community School District v. Stachura*, 477 U.S. 299, 310, 316, 106 S. Ct. 2537 (1986) (presumed damages are designed to "roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure.").

Although, the deliberate and reckless infliction of mental suffering can be easily established by the Defendants' failure to adequately perform CPR to save Pena-Ruiz's an the suffering the next of kin will face, the emotional damage is severe.

The conduct has caused a substantial suffering of the loss of next of kin by the Plaintiff in the hands of the Defendants by their failure to save Pena-Ruiz's life. The physical and emotional distress of pain and suffering on the Plaintiff was caused by the Defendant's actions.

Since the third cause of action establishes a plausible claim for relief, under Fed. R. Civ. Rule 12(b)(6) this Court must agree that enough facts to raise the claim beyond the level of

speculation has been presented, and that the case has been "nudged across the line from conceivable to plausible."

As such, this Court must agree that based on the minimum requirements of Federal Rules of Civil Procedure Rule 12(b)(6), that the sufficiency of the pleadings has been met and that not only has the Plaintiff complied with all the requirements of Rule 8 and Rule 9 of the Federal Rules of Civil Procedure, but that sufficient legal theory and cognizable claim as a matter of law has been presented to raise the claims beyond the level of speculation and has thus "nudged the claims across the line from conceivable to plausible." *Id. Twombly* at 1974   This matter should be allowed to proceed to the discovery phases and beyond.

## CONCLUSION

WHEREFORE, counsel respectfully prays that the Government's Motion to Dismiss the Amended Complaint be denied.

Done this 1st day of October 2012.

Respectfully submitted,

s/ Erick Morales-Perez
Erick Morales-Perez, Esquire
Florida Bar # 750182
Puerto Rico Bar # 8705
USDC-PR Bar # 203211
P.O. Box 10409
San Juan, PR 00922
(787) 605-8000 Office
Email: ekmorpr@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby do certify that on <u>October 1, 2012</u>, I filed the foregoing document with the Clerk of Court using the CM/ECF  Electronic Filing System., who will notify all counsels of record.


Respectfully submitted,


<u>s/ Erick Morales-Perez</u>
Erick Morales-Perez, Esquire
Florida Bar # 750182
Puerto Rico Bar # 8705
USDC-PR Bar # 203211
P.O. Box 10409
San Juan, PR 00922
(787) 605-8000 Office
Email: ekmorpr@yahoo.com