UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22248-CIV-HUCK/O'SULLIVAN

MARILYN ECHEVARRIA-DE-PENA,

    Plaintiff,

v.

UNITED STATES OF AMERICA;
BUREAU OF PRISONS;
WARDEN JORGE L. PASTRANA;
DR. JUAN MONSERRATE; and
CHARLES McCORMICK
OFFICERS

    Defendants.
_____/

This matter is before the Court upon the United States of America (the "United States"), the Federal Bureau of Prisons ("BOP"), Warden Jorge L. Pastrana, and Dr. Juan Monserrate (collectively, "Defendants[']")[1] Motion to Dismiss the Second Amended Complaint, filed December 18, 2012. (D.E. # 57). For the reasons discussed below, the Motion is granted in part and denied in part.

I.    BACKGROUND

Marilyn Echevarria de Peña ("Plaintiff") is the widow of Samuel Peña-Ruiz ("Peña-Ruiz"), who, at the time of his death, was a federal inmate at the United States Federal Correctional Institution in Miami, Florida ("FCI Miami"). Plaintiff alleges that her late husband suffered from a number of illnesses—including hypertension, obesity, diabetes, hyperlipidemia, gastroesophageal reflux disease, and an anxiety disorder—which were chronic and serious enough to require constant monitoring. Peña-Ruiz died while in custody on October 30, 2008 after exercising and collapsing from a heart attack on a step machine at FCI Miami. According to Plaintiff, Peña-Ruiz was gasping for air after collapsing and required cardiopulmonary resuscitation ("CPR"), but an FCI Miami guard, Charles McCormick, arrived at the scene and ordered other inmates to stop providing CPR and did not provide CPR himself. A few minutes later, Dr. Monserrate, the medical director at FCI Miami, arrived at the scene but did not provide

---

[1] Defendant, Charles McCormick, is not a party to the Motion to Dismiss.

CPR. After approximately twenty more minutes passed, a medical transport vehicle arrived, and Peña-Ruiz was transported to the medical area at the prison.

In her Second Amended Complaint, Plaintiff asserts causes of action for (1) negligence pursuant to the Federal Tort Claims Act ("FTCA"); (2) violations of the Eighth Amendment to the United States Constitution; and (3) physical, mental, and emotional distress. As the bases for her claims, Plaintiff alleges that Warden Pastrana, as the warden of FCI Miami, failed to provide proper training to his subordinates on how to handle medical emergencies and failed to instruct his subordinates to respond quickly to, or to prevent, medical emergencies. As to Dr. Monserrate, Plaintiff claims that he should have provided Peña-Ruiz with a monitored exercise regimen and should have provided CPR to Peña-Ruiz after his heart attack and collapse but failed to do so. Plaintiff also claims that BOP and the United States failed to train employees properly and failed to provide proper medical care to Peña-Ruiz. In addition, Plaintiff claims that BOP was negligent by designating Peña-Ruiz to a non-medical facility.

Defendants move to dismiss the claims arguing that only the United States is a proper party to the First Cause of Action for negligence. They further argue that to the extent that the claim is based on BOP's alleged failure to train employees and BOP's designation of Peña-Ruiz to a non-medical facility, it is barred by the discretionary function exception to the FTCA waiver of sovereign immunity. Defendants move to dismiss the Second Cause of Action for violation of Peña-Ruiz's Eighth Amendment rights on several grounds. They argue that the Court lacks jurisdiction over the BOP, as well as Warden Pastrana and Dr. Monserrate to the extent they are sued in their official capacities. They also argue that the claim fails because Plaintiff has failed to allege a violation of Peña-Ruiz's Eighth Amendment rights and the claim is barred by qualified immunity. As to the Third Cause of Action, Defendants argue that the claim fails because Plaintiff was not present when her husband passed away and because the alleged actions of Defendants do not amount to outrageous conduct.

## II.     STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, all factual allegations in the complaint are considered true and are construed in the light most favorable to the plaintiff. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Under Federal Rule of Civil Procedure 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must

be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). "[T]he statement need only 'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must, however, present "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Bell v. J.B. Hunt Transp., Inc.*, 427 Fed. App'x 705, 707 (11th Cir. 2011) (per curiam) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is appropriate when the Court lacks subject-matter jurisdiction. Facial attacks on subject-matter jurisdiction "require the court . . . to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Additionally, a motion to dismiss may be granted with respect to some claims and denied as to others. *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077 (11th Cir. 2004) (reversing district court's dismissal of some claims alleged in complaint, while affirming dismissal of other claims); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982) (explaining a "motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder.").

## III.     DISCUSSION

### A. Plaintiff's First Cause of Action for Negligence

Plaintiff's First Cause of Action for negligence is brought pursuant to the FTCA. This claim is based on allegations that Warden Pastrana and BOP failed to adequately train employees and that BOP negligently designated Peña-Ruiz to a non-medical prison. Plaintiff also alleged that Dr. Monserrate failed to provide Peña-Ruiz with a proper exercise program and failed to provide Peña-Ruiz with proper medical treatment after he suffered a heart attack by not providing CPR and not bringing his medical bag when responding to Peña-Ruiz's collapse.

The doctrine of sovereign immunity is jurisdictional and precludes suit against the United States unless it consents to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It

is axiomatic that the United States may not be sued without its consent and that its consent is a prerequisite for jurisdiction."). The shield of sovereign immunity also extends to federal agencies and federal employees who are sued in their official capacities. *See Ishler v. Internal Revenue Service*, 237 F. App'x 394, 397 (11th Cir. 2007). The FTCA provides a waiver of sovereign immunity for suits brought in federal court alleging negligence of United States employees. *See Cohen v. United States*, 151 F.3d 1338, 1340 (11th Cir. 1998).

Defendants first argue that the BOP, Warden Pastrana, and Dr. Monserrate are not proper parties for claims brought under the FTCA. Defendants are correct. "It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a [FTCA] suit." *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (explaining "an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction."). Plaintiff responds that "[t]he mentioning of Warden Pastrana, Dr. Monserrate, and Officer McCormick in the Second Amended Complaint . . . is [merely] to provide a summary of the parties to the court and their actions." The allegations, however, do not support this position because the Second Amended Complaint states that "Defendants C.O. McCormick, Pastrana, Monserrate, USA, BOP and its employees are liable to Plaintiff under the Federal Tort Claims Act." (Sec. Am. Compl. ¶ 73).

Curiously, notwithstanding the fact that Plaintiff represents in her Response that she has not brought the First Cause of Action against any party except the United States, she goes on to argue in the alternative that Defendants may not raise this issue by their Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). This argument is misplaced because the Motion to Dismiss was made under 12(b)(6) and 12(b)(1). Motions under 12(b)(1) are for lack of subject matter jurisdiction, which is the pertinent issue here. As discussed above, the shield of sovereign immunity is jurisdictional and extends to government employees who are sued in their official capacities. Thus, the Court lacks jurisdiction over Warden Pastrana, Dr. Monserrate, and BOP.

Defendants further argue that the claims against the BOP for negligent designation of Peña-Ruiz to a non-medical facility and negligent training of its employees should be dismissed because they are discretionary functions that are not subject to the sovereign immunity waiver of the FTCA. The discretionary function exception applies to preclude lawsuits that are

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal

>agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

A two-part test applies to determine whether the discretionary function exception applies in a given case. *Cohen*, 151 F.3d at 1341. First, the Court must determine whether the conduct that forms the basis of the suit involves an element of judgment or choice. *See id.* at 1341. "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (internal quotation marks omitted) (quoting *United States v. Gaubert,* 499 U.S. 315, 322 (1991)). "Second, 'if the conduct at issue involves the exercise of judgment, [the Court] must determine whether that judgment is grounded in considerations of public policy.'" *Id.* (quoting *Gaubert,* 499 U.S. at 322-23). The relevant public policy considerations are the social, economic, and political policy decisions that are shielded from judicial second-guessing. *See Gaubert,* 499 U.S. at 323 ("[T]he purpose of the [discretionary function] exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . .").

Turning to Defendants' argument, they are correct that BOP's decision to assign Peña-Ruiz to a non-medical facility falls under the discretionary function exception. The Eleventh Circuit has found that BOP's choices about what facilities to assign prisoners involves a judgment of choice, satisfying the first part of the two-part test to determine whether the discretionary function exception applies. *Cohen*, 151 F.3d at 1343. The *Cohen* court went on to find that the second part of the two-part test was also met under these circumstances because BOP's decisions as to "how to classify prisoners and choos[e] the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security . . . ." *Id.* Thus, *Cohen* instructs that Plaintiff's claim, based upon BOP's decision to assign Peña-Ruiz to a particular prison, is not actionable under the FTCA because the discretionary function exception applies. *See also Lambert v. United States*, 198 F. App'x 835, 838 (11th Cir. 2006) (finding the discretionary function exception applied to claims that BOP negligently assigned a prisoner to a medium security prison).

Plaintiff's claim based upon the alleged negligent training of employees also falls within the ambit of the discretionary function exception. There is no doubt that BOP exercises

5

discretion in how it trains its employees, meeting the first part of the two-part test. This decision is also grounded in considerations of public policy because decisions as to how to train employees necessarily involve the allocation of BOP's economic resources. Furthermore, although the Eleventh Circuit has never considered this issue, at least two other circuit courts of appeal have found that training of employees implicates the discretionary function exception. *See Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005) (finding the "discretionary function exemption protects the government from liability for claims premised on the lack of training"); *Gager v. United States*, 149 F.3d 918, 920 (9th Cir. 1998) (same); *see also Starnes ex rel. AS v. United States*, No. 06-10079-CIV, 2007 WL 5238398, at *6 (S.D. Fla. May 15, 2007) (explaining "decision[s] as to what training to provide . . . involves choice and judgment, and is grounded in considerations of public policy.").

Plaintiff urges the Court to reject Defendants' argument that the discretionary function exception applies for two reasons. First, Plaintiff argues that because the statutory text of § 2680 includes the words "due care," and "[t]he violation of not 'exercising due care' was crucial in the instant matter," the Court should not find that the discretionary function exception applies. This argument fails because the statutory "due care" language is not an additional requirement to be met for the discretionary function exception to apply. *See Williams v. United States*, 314 F. App'x 253, 257 (11th Cir. 2009) ("The discretionary function exception applies regardless of whether the agency or employee exercised due care."). Plaintiff further argues that the second part of the discretionary function exception test—i.e. whether the judgment is grounded in consideration of public policy—is an issue that the Court may only address once discovery is completed. The Eleventh Circuit, however, previously rejected this argument and explained that the discretionary function exception may be properly resolved by motion to dismiss before discovery is completed when the facts alleged in the complaint sufficiently describe acts that fall within the exception. *See Mesa v. United States*, 123 F.3d 1435, 1439 (11th Cir. 1997). Such is the case here because, as discussed above, prisoner designation and negligent training is clearly conduct that falls within the discretionary function exception. Therefore, Plaintiff's claims based on allegations that Peña-Ruiz was negligently designated to a non-medical prison and BOP negligently trained employees are precluded by the discretionary function exception to the FTCA waiver of sovereign immunity.

Accordingly, BOP, Warden Pastrana, and Dr. Monserrate are not proper defendants in the First Cause of Action. Additionally, the allegations that BOP negligently designated Peña-Ruiz

to a non-medical prison and failed to properly train employees cannot form the basis of this cause of action because this is conduct that falls within the discretionary function exception to the FTCA.

    B.  <u>Plaintiff's Second Cause of Action for Deprivation of Eighth Amendment Rights</u>

        Plaintiff's Second Cause of Action is brought pursuant to *Bivens*[2] for alleged Eighth Amendment violations. The claim is based on allegations that Dr. Monserrate did not provide Peña-Ruiz a properly supervised exercise program and did not respond to Peña-Ruiz's medical needs properly after he suffered a heart attack by not providing CPR and not bringing his medical bag to the scene. Plaintiff further alleges that Warden Pastrana violated Peña-Ruiz's Eighth Amendment rights by failing to provide the proper training to Dr. Monserrate and other prison employees on how to handle and prevent life threatening emergencies.

        *i.*    *Jurisdiction*

    Defendants first move to dismiss this cause of action on the grounds that the Court lacks jurisdiction over the claims against the BOP, as well as Warden Pastrana and Dr. Monserrate to the extent they are sued in their official capacities. Plaintiff has not addressed the merits of Defendants' argument. Instead, Plaintiff responds that this claim is brought against Warden Pastrana and Dr. Monserrate in their personal capacities only. Defendants are indeed correct that the BOP, as well Warden Pastrana, and Dr. Monserrate, in their official capacities, are not appropriate parties to this claim. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend *Bivens* liability to federal agencies); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 297-298 (11th Cir. 2009) (explaining *Bivens* claims are not actionable against federal agencies or federal employees sued in their official capacities). The Second Cause of Action, however, is not brought against the BOP; only Warden Pastrana, Dr. Monserrate, and Officer McCormick are listed as defendants to this claim. (Sec. Am. Compl. ¶¶ 74-98). While it is not clear from the allegations whether Warden Pastrana and Dr. Monserrate are sued in their official capacities or not, Plaintiff represents in her Response, and it is acknowledged, that these defendants are sued in their individual capacities only.[3]

---

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] The general allegations in Plaintiff's Second Amended Complaint state that Warden Pastrana and Dr. Monserrate are being sued in both their individual and official capacities. (Sec. Am. Compl. ¶¶ 12-14). The Second Cause of Action, however, does not specify in which capacity the cause of action is brought against Warden Pastrana and Dr. Monserrate. (*Id*. ¶¶ 74-98).

      *ii.*    *Plaintiff's Claims Against Dr. Monserrate and Warden Pastrana*

Defendants also argue that Plaintiff has failed to plead facts sufficient to sustain claims for violations of the Eighth Amendment. "The Eighth Amendment governs 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" *Farrow v. West.*, 320 F.3d 1235, 1242 (11th Cir. 2003) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). However, not all poor treatment of a prisoner will rise to the level of an Eighth Amendment violation. The Eighth Amendment prohibits "only the 'unnecessary and wanton infliction of pain[.]'" *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). To demonstrate a violation of the Eighth Amendment, a plaintiff must show (1) evidence of an objectively serious medical need; and (2) that the prison official acted with an attitude of deliberate indifference to that serious medical need. *Id.* at 1243.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1243 (internal quotation marks omitted) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994)). The need must be one that would pose a substantial risk of serious harm if left unattended. *See id.* For a prison official to be deliberately indifferent to a prisoner's serious medical needs, the official must know of and disregard an excessive risk to an inmate's health or safety. *See id.* at 1245. Thus, the prison official must have acted with subjective knowledge of a risk of harm—that is, he must have "disregarded a risk of harm of which he was aware." *See Farmer v. Brennan*, 511 U.S. 825, 826 (1994). Further, subjective knowledge of a risk of harm cannot be premised upon obviousness or constructive notice. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). However, a fact finder is permitted to find that a prison official had actual subjective knowledge of a risk of harm because of the obviousness of the risk. *See id.* Here, Plaintiff's allegation that Peña-Ruiz collapsed from a heart attack after exercising on the step machine causing him to gasp for air, if true, would alert even a lay person to Peña-Ruiz's immediate need for medical attention after he collapsed, establishing that this was a serious medical condition.

Dr. Monserrate may also be found to have disregarded the risk of harm by not providing immediate medical attention such as CPR. A prison official's delay in providing medical treatment for a prisoner's medical emergency may, depending on the specific factual circumstances, constitute deliberate indifference. *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("[An] official acts with deliberate indifference when he

8

intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay."); *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) ("The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."). Furthermore, the Eleventh Circuit has found that when a prison official is aware that an inmate is in need of CPR but fails to provide it, the official has violated the inmate's Eighth Amendment rights. *See Bozeman v. Orum*, 422 F.3d 1265, 1269-1273 (11th Cir. 2005). Additionally, Plaintiff has alleged sufficient facts to establish that Dr. Monserrate was aware of Peña-Ruiz's condition because Dr. Monserrate allegedly saw Peña-Ruiz collapsed on the floor. Thus, Plaintiff's allegation that Dr. Monserrate failed to timely provide CPR, when viewed in the light most favorable to Plaintiff, is sufficient to survive a motion to dismiss.

Plaintiff also claims that Dr. Monserrate failed to provide Peña-Ruiz with a proper supervised exercise program, which, according to Plaintiff, was required because Peña-Ruiz suffered from hypertension, obesity, diabetes, hyperlipidemia, gastroesophageal reflux disease, and an anxiety disorder. These conditions are substantial enough to constitute a serious medical condition because a lay person would recognize that illnesses such as diabetes and hyperlipidemia require medical attention. However, for Plaintiff's claim to be actionable, she must establish that Dr. Monserrate's actions amounted to deliberate indifference to these medical needs, which requires more than a showing of mere negligence. *Farrow*, 320 F.3d at 1245-46. Conduct that amounts to deliberate indifference must be "something more than a medical judgment call, an accident, or an inadvertent failure." *Murrell v. Bennett*, 615 F.2d 306, 310, n.4 (5th Cir. 1980). Plaintiff's allegation that Dr. Monserrate did not provide a proper exercise program simply does not amount to the type of conduct required to establish deliberate indifference. Without more, this is an allegation of an accident or inadvertent failure, to the extent that the alleged conduct is improper at all.

Plaintiff further claims that Warden Pastrana violated Peña-Ruiz's Eighth Amendment rights by failing to provide the proper training to Dr. Monserrate and correctional officers to handle and prevent life threatening emergencies. Supervisors can be held responsible for constitutional violations of subordinates "when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff[], and [the supervisor's] conduct was causally related to the constitutional violation committed by his subordinate." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). This causal connection

9

can be established by history of widespread abuse such that a reasonable supervisor would be put on notice of the need to correct the alleged deprivation or when the supervisor's improper custom or policy results in deliberate indifference to constitutional rights. *Id.* This type of causal connection may be based upon the absence of a custom or policy such that, under certain circumstances, a supervisor's failure to train subordinates may be sufficient to impose supervisor liability. *See Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). A causal connection can also be established "by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1235 (internal quotation marks omitted) (quoting *Rivas*, 940 F.2d at 1494).

Here, Defendants are correct that Plaintiff has not alleged any facts to give rise to supervisor liability based on allegations that Warden Pastrana failed to instruct his subordinates on how to respond to, or prevent, medical emergencies. The *Rivas* decision is instructive on this point. In *Rivas*, a deputy sheriff mistakenly detained an individual for a probation violation believing he was someone else, which resulted in a lawsuit for claims of constitutional and civil rights violations against the deputy's supervisor and others. *Rivas*, 940 F.2d at 1492-94. The court found that the supervisor could be held liable because he did not train the deputy properly and because he "knew of prior instances of mistaken identity, but allowed his deputies to detain individuals even where discrepancies existed." *See id.* at 1495. Thus, *Rivas* teaches that supervisor liability may be imposed based on a lack of training when the supervisor is put on notice that the lack of training might result in a deprivation of constitutional rights. Here, however, Plaintiff has not made any allegations that Warden Pastrana was aware that his alleged failure to train might result in a violation of constitutional rights. Therefore, Plaintiff has not made sufficient allegations to give rise to supervisor liability for Warden Pastrana's alleged failure to train or instruct subordinates.

### iii. Qualified Immunity

Defendants further argue that Plaintiff's claims for violations of the Eighth Amendment should be dismissed because the claims are barred by qualified immunity. "Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct 'violates clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) *cert. dismissed*, 131 S. Ct. 501 (U.S. 2010) (alteration

10

omitted) (quoting *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998)).[4] Therefore, qualified immunity applies only to officials acting within the scope of their discretionary authority. *See Forrester v. Stanley*, 394 F. App'x 673, 674 (11th Cir. 2010).

"Once a government official establishes that he was acting within the scope of his discretionary authority, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Taylor v. Alvarez*, 07-23003-CIV-HUCK, 2008 WL 1840719, at *2 (S.D. Fla. Apr. 21, 2008) (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002)). This requires "[t]he court . . . determine 'whether the plaintiff's allegations, if true, establish a constitutional violation.'" *See Keating*, 598 F.3d at 762 (quoting *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). Next, the Court must determine whether the constitutional violation was clearly established. *See id.* "If the plaintiff satisfies both parts of the [two-part] test, then the [official] is not entitled to qualified immunity." *Id.*[5]

a. Discretionary Authority

Thus, to determine whether qualified immunity applies, the first issue is whether Dr. Monserrate and Warden Pastrana acted within the scope of their discretionary authority when taking the actions alleged in the Second Amended Complaint. A government official acts within his discretionary authority when his actions "(1) 'were undertaken pursuant to the performance of his duties' and (2) were 'within the scope of his authority.'" *See Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558 (11th Cir.1988)). This determination turns on "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (alteration and internal quotation marks omitted) (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)). The inquiry focuses on the "relation of the injury complained of to the duties entrusted to the officer." *Id.*

As to Dr. Monserrate's alleged failure to provide proper medical care, the relevant question is—considering Plaintiff's allegation that Dr. Monserrate was the medical director of

---

[4] "The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Festa v. Santa Rosa Cnty. Florida*, 413 F. App'x 182, 184.

[5] The order in which these steps are considered is within the discretion of the Court. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

11

FCI Miami—whether Dr. Monserrate was permitted to respond to medical emergencies of this kind. It would be rather illogical to believe that Dr. Monserrate was not permitted to respond to medical emergencies at the facility in which he was the medical director. Therefore, the allegations are sufficient to establish that Dr. Monserrate acted within his discretionary authority when he responded to Peña-Ruiz's collapse. The same reasoning applies to Dr. Monserrate's authority to provide a supervised exercise program. Because of Dr. Monserrate's position as medical director, he must have had the discretion to devise exercise plans or at least restrict prisoners' ability to exercise. Likewise, Warden Pastrana, as the warden of FCI Miami, must have had the discretionary authority to instruct subordinates on how and when to respond to medical emergencies.

### b. Establishment of a Constitutional Violation

Having established that the alleged conduct is within the Defendants' discretionary authority, the next issue is whether the conduct amounts to violations of a constitutional right. For the reasons discussed above, Plaintiff has failed to state a violation of Peña-Ruiz's Eighth Amendment rights based on allegations that Dr. Monserrate failed to provide Peña-Ruiz with a proper supervised exercise program and allegations that Warden Pastrana failed to properly train subordinates. Thus, these allegations fail the first part of the two-part test and are, therefore, precluded by qualified immunity. The allegation that Dr. Monserrate failed to provide proper medical care is sufficient to satisfy this prong of the two-part test because it gives rise to an inference of an Eighth Amendment violation.

### c. Violation of a Clearly Established Right

The next inquiry is whether Dr. Monserrate and Warden Pastrana violated "clearly established" rights by their alleged actions. A right is clearly established if public officials have fair notice that the alleged conduct is prohibited. *See Randall v. Scott,* 610 F.3d 701, 715 (11th Cir. 2010). A right may be found to be clearly established in three ways. "First, the conduct may be 'so bad that case law is not needed to establish that the conduct cannot be lawful.'" *Harper v. Perkins*, 459 F. App'x 822, 825 (11th Cir. 2012) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)). Second, broad principles found in case law that establish conduct as unconstitutional are sufficient to determine certain conduct violates a clearly established right. *Id.* "If a broad statement of legal principle is to 'establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the

12

official's conduct did violate federal law when the official acted.'" *Id.* (quoting *Vinyard*, 311 F.3d at 1350). To be sure, general statements of the law may clearly establish a right because even though the very action in question has not previously been held unlawful, previous decisional law may apply with obvious clarity to the conduct in question. *See Hope*, 536 U.S. at 741; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (explaining the "clearly established" standard does not require that the very action in question have been previously found unlawful). Finally, a right may also be clearly established because a materially similar case has previously been decided. *Harper*, 459 F. App'x at 825; *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). Still, "a case that is fairly distinguishable from the circumstance facing a government official cannot clearly establish the law for the circumstances facing that government official." *Harper*, 459 F. App'x at 825.

As to Plaintiff's allegation that Dr. Monserrate did not provide proper medical treatment, including CPR, to Peña-Ruiz for at least 20 minutes after Peña-Ruiz collapsed, this allegation is sufficiently pleaded to state a violation of a clearly established right. It is clearly established, as a general matter, that delaying medical treatment for a life threatening emergency amounts to deliberate indifference to a serious medical condition. *See Lancaster*, 116 F.3d at 1425 ("[C]ase law [has] made it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment because denying or delaying medical treatment is tantamount to unnecessary and wanton infliction of pain."); *Carswell v. Bay Cnty*, 854 F.2d 454, 457 (11th Cir. 1988) (explaining "knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.").

Additionally, Plaintiff's allegation is factually similar to allegations that the Eleventh Circuit found gave rise to viable Eighth Amendment claims in *Bozeman*, 422 F.3d at 1269. In *Bozeman*, a prisoner was unruly in his cell, which prompted prison guards to enter the cell to subdue him. *Id.* at 1269-70. After a fight in the cell, prison guards removed the prisoner who was not breathing and transported him to a holding cell but did not provide medical treatment such as CPR for several minutes. *Id.* The court found that if the prison guards knew that the prisoner was not breathing, the failure to provide medical attention would constitute an Eighth Amendment violation. *Id.* at 1273. In reaching this conclusion, the court explained that "[a]

13

delay in care for known unconsciousness brought on by asphyxiation is especially time-sensitive and must ordinarily be measured not in hours, but in a few minutes." *Id.* This case demonstrates that a prison official's failure to respond promptly to life threatening emergencies, which require immediate life-saving medical treatment such as CPR, may be a violation of a prisoner's constitutional rights.[6]

Here, Plaintiff has pleaded that Dr. Monserrate found Peña-Ruiz after he had collapsed but did not provide life-saving techniques, including CPR, for at least 20 minutes before Peña-Ruiz was transported elsewhere. The Eleventh Circuit's holding in *Bozeman*, which found Eighth Amendment violations where prison officials ignored an inmate's needs for CPR—as well as the general, well established principle that a prison official's delay in providing medical attention for a life threatening emergency amounts to deliberate indifference of a serious medical condition—are sufficient to find that Plaintiff's allegation amount to a violation of a clearly established right. Therefore, Plaintiff's claim for violation of Peña-Ruiz's Eighth Amendment rights based on Dr. Monserrate's alleged failure to respond properly to Peña-Ruiz's medical emergency is not barred on qualified immunity grounds.

On the other hand, Dr. Monserrate's alleged failure to provide Peña-Ruiz with a proper exercise program and Warden Pastrana's alleged failure to implement a policy or instruct subordinates on how to respond to medical emergencies are not violations of clearly established rights.[7] Plaintiff has not pointed to any authority to suggest that this conduct is prohibited. Nor is this the type of conduct that is so obviously egregious that case law is not necessary to establish it is prohibited. Accordingly, Plaintiff's claims against Warden Pastrana for failure to properly train subordinates and Dr. Monserrate for failure to provide an exercise program are barred by the qualified immunity doctrine.

   C.  <u>Plaintiff's Third Cause of Action for Physical, Mental, and Emotional Distress</u>

Plaintiff's Third Cause of Action for physical, mental, and emotional distress appears to be a claim for intentional or negligent infliction of emotional distress.[8] This claim, like the

---

[6] The *Bozeman* court then went on to find that qualified immunity did not apply because prior case law put the defendants on notice that their actions, if proven, violated the prisoner's constitutional rights. 422 F.3d at 1273-74.

[7] As discussed above, these specific allegations also fail to amount to a violation of Peña-Ruiz's Eighth Amendment rights.

[8] Paragraph 103 of the Second Amended Complaint states that "this anxiety, emotional distress, physical and mental anguish, pain and suffering are actionable under the general tort law of the

14

others, is based on Warden Pastrana's alleged failure to properly train subordinates and Dr. Monserrate's alleged failure to provide a proper exercise program and respond properly to Peña-Ruiz's heart attack.  Defendants argue that the claim should be dismissed because Plaintiff has failed to allege any "outrageous conduct" for an intentional infliction of emotional distress claim. They also argue that Plaintiff has failed to state a claim for negligent infliction of emotional distress because she did not suffer an impact and was not present when the alleged conduct took place.

A claim for intentional infliction of emotional distress in Florida requires a plaintiff show "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."  *Williams*, 877 So. 2d at 870 (citing *De La Campa v. Grifols America, Inc.*, 819 So.2d 940, 943 (Fla. 3d DCA 2002)).  "Outrageous conduct is conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'"  *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla.1985)).  Defendants are correct that allegations of failure to provide proper training to employees and to provide CPR to Peña-Ruiz do not reflect conduct that goes beyond all possible bounds of decency.  *See Dependable Life Ins. Co. v. Harris*, 510 So. 2d 985, 988 (Fla. 5th DCA 1987) (explaining that, in general, more than mere negligence is required to state a claim for intentional infliction of emotional distress).

Furthermore, outrageous conduct that amounts to intentional infliction of emotional distress is not actionable by a family member of the victim of the outrageous conduct unless the family member was present at the time the outrageous conduct took place.  *See Williams v. City of Minneola*, 575 So. 2d 683, 694 (Fla. 5th DCA 1991) ("[W]here the requisite outrageousness occurred in the defendant's acts toward the original victim, the emotional distress felt by close relatives of that victim when they learned of the acts [is] not actionable if the relatives were not present during the acts and the defendant's conduct was not directed at the relatives."). Plaintiff's claim arises out of Defendants' alleged conduct towards her deceased husband while he was incarcerated, not conduct directed towards her, and Plaintiff does not allege that she was present at the time the conduct took place.  Thus, Plaintiff has not stated a claim for intentional infliction of emotional distress.

---

State of Florida, and/or as an intentional or negligent infliction of emotional distress [claim] under the tort law of the State of Florida."  (Sec. Am. Compl. ¶ 103).

15

To the extent that this is a claim for negligent infliction of emotional distress, the claim fails because Plaintiff did not suffer an impact and was not present at the time the injury occurred. Defendants correctly argue that the tort of negligent infliction of emotional distress is limited by Florida's impact rule, which requires either that the Plaintiff suffered an "impact" or that the complained of mental distress is manifested by physical injury. *See Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). In the latter instance, the plaintiff must have been involved in the incident and must have suffered the mental distress and physical impairment within a short time after the incident. *See id.* Plaintiff has not alleged that she suffered an impact or that she was involved in the incidents that resulted in her distress. Therefore, Plaintiff's claim for physical, mental, and emotional distress is not actionable under a negligent infliction of emotional distress theory.

For these reasons, the Third Cause of Action fails to state a claim upon which relief can be granted.

## IV.    CONCLUSION

As to the First Cause of Action, the Court lacks jurisdiction over Warden Pastrana, Dr. Monserrate, and BOP. Furthermore, the claim, as it relates to the BOP, fails for the additional reason that allegations of negligent prison assignment and negligent training of prison employees are subject to the discretionary function exception to the FTCA. However, the claim survives to the extent it is brought against the United States. Therefore, it is hereby ORDERED that the Motion to Dismiss this cause of action is GRANTED with respect to the allegations against Warden Pastrana, Dr. Monserrate, and BOP.

Regarding the Second Cause of Action, the allegations that Dr. Monserrate did not provide a proper exercise program to Peña-Ruiz and the allegation that Warden Pastrana failed to properly instruct subordinates do not amount to Eighth Amendment violations. Additionally, these allegations are precluded by the qualified immunity doctrine. However, the allegation that Dr. Monserrate failed to provide proper medical care is sufficient to survive the Motion to Dismiss. Accordingly, it is hereby ORDERED that the Motion to Dismiss this cause of action is GRANTED with respect to the allegation that Dr. Monserrate did not provide a proper exercise program and the allegation that Warden Pastrana failed to properly instruct subordinates and DENIED with respect to the allegation that Dr. Monserrate failed to provide proper medical care to Peña-Ruiz after he collapsed.

Plaintiff's Third Cause of Action for physical, mental, and emotional distress fails to state a claim upon which relief can be granted because the alleged conduct is not outrageous and because Plaintiff was not present when the alleged conduct occurred.  Therefore, it is hereby ORDERED that Motion to Dismiss this cause of action is GRANTED.

DONE AND ORDERED in Chambers, Miami, Florida, on February 19, 2013.

Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record